UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

DEBBY DeLUCA,

                                                                                               12 Civ. 8239 (TPG)

                    Plaintiff,

   -against-

SIRIUS XM RADIO, INC.,

                    *Defendant*.
_____

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR PARTIAL SUMMARY JUDGMENT**

     Plaintiff Debby DeLuca, through her undersigned counsel, respectfully submits this Memorandum of Law in Support of her motion for partial summary judgment: (a) dismissing Defendant's "factor other than sex" affirmative defense to the initial 2001 salary disparity between Plaintiff and the Department's 11 male producers; and (b) finding Defendant liable under the federal and New York Equal Pay Acts because it never took steps to remedy the initial 2001 salary disparity between Plaintiff and the Department's 11 male producers.

     This motion does *not* address the extent of Plaintiff's damages under the federal and New York Equal Pay Acts, or whether the violations of those equal pay laws was willful. Nor does it address any of Plaintiff's other claims, which involve intentional discrimination, retaliation, and unpaid overtime.

As detailed in the accompanying Rule 56.1 Statement, the accompanying Declaration of Plaintiff Debby DeLuca, and the accompany Declaration of Scott A. Lucas, the motion should be granted. *See, e.g., Sandor v. Safe Horizon, Inc.*, 2011 WL 115295, at * 13-16 (E.D.N.Y. 2011) (granting summary judgment to plaintiff on equal pay claim); *Dreves v. Hudson Group (HG) Retail, LLC*, 2013 WL 2634429, at *9 (D.Vt. 2013) (granting plaintiff's motion for summary judgment as to liability on plaintiff's equal pay claim, and reserving damages issue for trial).

**Introduction & Summary of Argument**

Throughout this litigation, Defendant fiercely resisted disclosing what the male imaging producers were paid in 2001, the year Plaintiff became an imaging producer. That is because Defendant had a gender-segregated salary structure for male and female imaging producers hired in and before 2001.

As this Court has recognized, it is logical to infer that a salary disparity initially based on sex will persist over time unless remedied.

The Equal Pay Act is a strict liability statute. Since producers fill jobs with substantially equal skill, effort and responsibility requirements, that are performed under substantially equal working conditions, it is the *Defendant's* burden to prove that gender played no role in the disparity in pay between male and female employees doing the same job.

That is a "heavy burden". If sex is but one of several causes for the pay disparity, the Defendant is liable. Defendant admits to not knowing the factors that accounted for the specific pay disparities in male and female producer salaries in 2001. Lucas Decl. Ex. 4 (Rule 30(b)(6) depo. Tr. at 18:13-45:16).

Accordingly, Defendant cannot create a triable issue of fact as to whether it has satisfied its "heavy burden" to prove that the disparity in male and female salaries in 2001 was based on a bona fide "factor other than sex".

As detailed below, the pay disparity has, as expected, persisted over the years because the initial pay disparity was never remedied. Defendant is thus liable under the federal and New York Equal Pay Acts.

## Background

Plaintiff filed a Complaint in this action, and on September 30, 2014 an Amended Complaint, alleging several causes of action, including Violation of the Equal Pay Act, 29 U.S.C. § 206(d) (Fourth Cause of Action) and Violation of the New York Equal Pay Act, New York Labor Law § 194 (Fifth Cause of Action). See the accompanying Declaration of Scott A. Lucas ("Lucas Decl.") at Ex. 1.

On August 18, 2016 Defendant filed an Amended Answer alleging, as an affirmative defense to Plaintiff's equal pay claims: "To the extent any pay disparities exist between Plaintiff and male imaging producers in the Music

Department (which Defendant denies), any differential is based on factors other than sex." Lucas Decl. Ex. 2 (Amended Answer, at Tenth Affirmative Defense).

The Court previously granted, in relevant part, Plaintiff's motion to compel discovery from 2001, the year Plaintiff became an imaging producer at the Company, based on "the logical inference that, if, at the time of her promotion, plaintiff was given a lower salary than her male counterparts because of her gender or sexual orientation, then there are grounds to believe that the salary gap between plaintiff and her male counterparts persisted throughout plaintiff's employ." *Deluca v. Sirius Xm Radio, Inc.*, 2016 WL 3034332, at *2 (S.D.N.Y. 2016).

The discovery in this case has established that every female producer who worked for the Company in 2001 – the year Plaintiff became a producer – was paid less than every male producer who worked at the Company in 2001. *See* Rule 56.1 Statement at ¶¶ 60-125.

Defendant has identified the Department's male producers as having the following salaries in 2001:

| Gennadily Giller | Torey Drinker | Robert Taylor | Luis Torres | Peter Gustin | Teddy Zambetti | Mitch Todd | Raimund Kirstein | Todd Statkiewicz | Claude Wright | Tom Yankowski |
|---|---|---|---|---|---|---|---|---|---|---|
| $78,750 [Lucas Decl. Ex. 28] | $75,000 [Lucas Decl. Ex. 28] | $84,785 [Lucas Decl. Ex. 28] | $62,000 [Lucas Decl. Ex. 28] | $68,300 [Lucas Decl. Ex. 28] | $75,000 [Lucas Decl. Ex. 21] | $75,000 [Lucas Decl. Ex. 20] | $82,400 [Lucas Decl. Ex. 20] | $65,000 [Lucas Decl. Ex. 20] | $84,815 [Lucas Decl. Ex. 28] | $75,000 [Lucas Decl. Ex. 28] |

4

Defendant has identified the Department's female producers as having the following salaries in 2001:

| Suzanne Ventra | Catherine Sardina | Debby DeLuca |
|---|---|---|
| $55,000 [Lucas Decl. Ex. 28] | $40,000 [Lucas Decl. Ex. 28] | $55,000 [Lucas Decl. Ex. 28] |

The evidence in this case also establishes that the producer positions at the Company in 2001, the year Plaintiff became a producer, required substantially equal skill, responsibility and effort, and were performed under substantially equal working conditions. *See* Rule 56.1 Statement at ¶¶ 34-59.

The Company has argued that Teddy Zambetti, a male producer in 2001, should be excluded as a comparator because of alleged differences in his job duties. If Zambetti is excluded as a comparator for present purposes, then that would leave Tom Yankowski as the only producer from 2001 who still works as a producer in the Department. *See* Rule 56.1 Statement at ¶¶ 118-123.

A comparison between Tom Yankowski's salary progression and Plaintiff's confirms that the salary gap persisted throughout Plaintiff's employment. The

chart that follows accurately reflects salary data it depicts (Lucas Decl. Ex. 28; DeLuca Decl. ¶ 76):



*After Ms. DeLuca was moved to the night shift in November 2001, her salary was adjusted by 10% ($5,500) for a night shift differential. That differential was implemented in two steps: a $2,000 adjustment to Ms. DeLuca's salary in November 2001, and a $3,500 adjustment to her annual salary in August 2002. To account for that variable, those adjustments have been backed out of Ms. DeLuca's salary as reflected in this chart; the $5,500 night shift differential is similarly backed out of DeLuca's salary figures for each succeeding year through 2015, the year in which, at some point following the annual salary setting process, Ms. DeLuca began working predominantly during the day.

This chart does not back out the added compensation Ms. DeLuca received for her April 2004 promotion to Night Manager, and therefore understates the magnitude of the disparity from 2004 through 2009.

*In Belfi v. Prendergast,* 191 F.3d 129, 136 (2d Cir.1999), the Second Circuit stated that "to successfully establish the 'factor other than sex' defense, an employer must also demonstrate that it had a legitimate business reason for implementing the gender-neutral factor <u>that brought about</u> the wage differential" (emphasis added).  *See also Grimes v. Athens Newspaper, Inc.*, 604 F.Supp. 1166, 1168 (M.D. Ga. 1985) (EPA violated where "The only discernible basis for paying males the varying amounts they were paid seems to be the subjective judgment of defendant's hiring official and the willingness of the male employee to accept the amount offered," and "The spread among male workers does not seem explainable on the basis of education, experience or seniority.").

Here, Defendant cannot even identify a gender neutral factor that "brought about" the wage disparity, and admits that it does not know the specifics regarding how the individual producer's 2001 salaries were established.  Lucas Decl. Ex. 4 (Rule 30(b)(6) depo. Tr. at 18:13-45:16).

Nor can the continuing gap be explained by performance factors.  Plaintiff, unlike Yankowski, was promoted to the Night Manager position, supervising a crew of 5-6 producers while continuing to work as a producer, and occupying a higher level (level 5) in that role than the standard imaging producer position at the Company (level 6, which, despite being higher numerically, is a lower rank).  *Id.*  Ms. DeLuca was Night Manager for 5-6 years, from 2004-2009.  *Id.*

Nor can performance explain the salary gap between DeLuca and Yankowski – the sole remaining comparator from 2001 if Zambetti (who is paid far more than Yankowski) excluded. For the years in which the Company gave numerically scored annual performance reviews (i.e., the seven-year period between 2002-2008), Yankowski's average score was 2.20 out of 3 and Plaintiff's average score was 2.27 (slightly higher): *Id.*

| Performance Appraisal Scores | | |
|---|---|---|
| | DeLuca | Yankowski |
| 2002 | 2.44 | 2.18 |
| 2003 | 2.42 | 2.33 |
| 2004 | 2.51 | 2.42 |
| 2005 | 2 | 2 |
| 2006 | 2.5 | 2 |
| 2007 | 2 | 2 |
| 2008 | 2 | 2.5 |
| AVERAGE | 2.27 | 2.2 |

Although some male producers hired *after* 2001 were paid salaries that were less than what the males producers were paid in 2001, the salaries of those who worked as producers in 2001 (and at any other time, for that matter) *never* went down over time, and, with rare exceptions (i.e. those who only worked at the Company a short while), only went up over time. *Id.*

9

Accordingly, if Plaintiff had had a larger salary than she did in 2001, as her male counterparts did, then she would not have had to work for years to reach the salary level that most of her male counterparts had in 2001.

Accordingly, the Company's failure to consciously remedy the effects of the disparity between male and female producer salaries in 2001 is fatal to the Company's position.  This precise issue was addressed in *EEOC v. Kendon of Dallas, Inc.*, 1984 WL 978, at *17 (E.D. Tex. Mar. 8, 1984), where the court stated:

> the burden is on [defendant] to show that its nondiscriminatory evaluation process dissolved the disparity in starting salary, and if so when. The company has elected to pitch camp at its denial of initial discrimination, and no effort was made to prove subsequent correction.  Instead, it merely offers evidence that some women eventually earned raises that lifted their salary above that of certain male torchworkers.  But those increases in preexisting wages were the result of developing seniority and of the special industry of the women who earned them. They were not awarded independently of previous wage, as might have been the case had the women actually moved from one job to another. There is no evidence that they were awarded with an eye to correcting the initial salary disparity. They were simply raises, and although the increments may have been fixed without regard to the sex of the employees, <u>the preexisting wage disparity lingered beneath the accumulating seniority and merit increases</u>.  [citations omitted]
>
> The same holds for the second assumption – that the wages of those promoted to leadperson remain tied to their initial salary.  The Commission has not framed its case to include a comparison of the wages paid male and female

> leadpersons. Instead, it begins as all such employees did, at the entry level, and assumes that the starting wage differential persists after promotion. This assumption is no more certain than the first, for [defendant's] process of awarding promotions and commensurate wage increases is not challenged as discriminatory. <u>Nevertheless, the assumption must be accepted because [defendant] has not shown that the wage increases that accompanied promotions were made without regard to the wage earned by the promoted torchworker at the time of the promotion. Again, the effect of the initial wage disparity must be assumed to have lingered</u>.

*Id.* (emphasis added).

Second Circuit and Supreme Court case law is in accord on this crucial point. See *Jamilik v. Yale University*, 362 Fed.Appx. 148, 150 (2d Cir. 2009) ("Yale asserts that Zotto's higher pay was due to his superior performance in his position. Again, however, none of the evidence Yale offers is relevant to the initial pay differential created in 1989 [*i.e.*, 20 years earlier]."); *Corning Glass Works v. Brennan*, 417 U.S. 188, 206-208 (1974) ("the issue before us is not whether the company, in some abstract sense, can be said to have treated men the same as women <u>after</u> 1966." \*\*\* Corning's action still left the inspectors on the day shift—virtually all women—earning a lower base wage than the night shift inspectors because of a differential <u>initially</u> based on sex[.]") (emphasis added).

Defendant could never prove the "factor other than sex" affirmative defense because that defense "is not met unless the factor of sex provides <u>no</u> <u>part</u> of the basis for the wage differential." *Meegan v. City of Buffalo*, 1980 WL 18660, at \*3

11

(W.D.N.Y. July 24, 1980) (emphasis added); *Beck-Wilson v. Principi*, 441 F.3d 353, 365 (6th Cir. 2006) (same); *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 590-91 (11th Cir. 1994) ("defendants must show that the factor of sex provided no basis for the wage differential.") (emphasis in original).

Defendant's EPA liability in this regard is underscored by another radio industry case – *Futran v. Ring Radio Co.*, 501 F.Supp. 34 (N.D. Ga. 1980) – which is much weaker than Plaintiff's case but otherwise strikingly similar.  The Plaintiff in *Futran* was a radio talk show host who was paid less than a male talk show host.  The *Futran* Court acknowledged that the comparator had a background that "*reflected superior job stability and jobs with greater public contact*," had "*greater potential by virtue of his guest host performance as a ringmaster*," and that he had "*[greater] potential for generating revenue for the station through endorsements*," and that those constituted "*important factor[s] 'other than sex.'* "  *Id.*, 501 F.Supp. at 739.

Nonetheless, the *Futran* Court entered judgment in Plaintiff's favor, together with liquidated damages:

> [E]ven taken cumulatively the foregoing factors do not form the basis for the wide disparity in salaries.  Perhaps, if the revenue generated for the station from personal endorsements by Mr. Wood became so much greater than that generated by Ms. Futran, it could explain a difference in raises during the course of employment, but it does not justify the large gap in their

starting salaries. If the foregoing factors were coupled with Mr. Wood's possessing significant broadcast experience, the court would be more inclined to find that the disparity was due completely to factors "other than sex," but he did not possess any prior broadcast experience. Instead, what the court does find is that much of the difference in salaries can be attributed to the plaintiff's sex. As stated previously, the requirements for the exception based on factors "other than sex" are not met "unless the factor of sex provides no part of the basis for the wage differential." Here, RING Radio paid Mr. Wood what was necessary to attract him to its station; it did the same with Ms. Futran, but it took considerably less money to attract her (based at least in part on her inferior bargaining position as a woman). However, paying a lesser rate simply because the market will bear that rate is impermissible under the Equal Pay Act. "Just such disparities were what Congress intended to correct by this legislation."

\*\*\*

[Defendant] has merely shown that some factors "other than sex" contributed to the differential; however, such factors were not intended to provide a "good faith" defense to a clear violation of the Act. The defendant … was aware that the Equal Pay Act "was in the picture," and impermissibly determined wages by basing them principally upon what the market would bear.

501Supp. at 739-40 (internal and external citations and footnotes omitted).

Finally, it is noted that while the Department's male producers routinely receive annual salary increases, annual increases in their bonus,

annual stock option grants and periodic grants of restricted stock units (RSUs), Defendant has:

- Frozen Plaintiff's salary for the past 8½ years;

- Substantially and permanently reduced Plaintiff's annual bonus (which was $21,807 in 2006, and is now $2,500);

- Excluded Plaintiff from any and all annual stock option grants since 2004; and

- Excluded Plaintiff from any and all RSU grants since May 2009 (the month before Plaintiff first complained to HR).

The following chart is based on compensation data provided by Defendant in discovery:



## **CONCLUSION**

For the foregoing reasons, it is respectfully requested that Plaintiff's motion for partial summary judgment be granted.

Dated:    New York, New York
         September 1, 2016

                                  Law Offices of Scott A. Lucas
                                  250 Park Avenue
                                  20th Floor
                                  New York, NY 10177
                                  (212) 983-6000
                                  *Attorneys for Plaintiff Debby DeLuca*

                                  By:    <u>*Scott A. Lucas*</u>